AO 106 (Rev. 06/09) Application for a Search Warrant

**UNSEALED PER ORDER OF COURT**

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED

SEP 1 2 2017

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| 3915 F Street, San Diego, California 92102 | ) ) ) |

Case No.   '17 MJ 3337

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A (incorporated herein)

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 and 846 | Possession with Intent to Distribute |

The application is based on these facts:
See Affidavit of Grant Carter (incorporated herein)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

~~HSI~~ DEA Special Agent Grant Carter
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/12/17

_____
*Judge's signature*

City and state: San Diego, CA

Hon. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

## **AFFIDAVIT IN SUPPORT OF APPLICATION**

I, Grant Carter, being duly sworn, declare and state:

### **INTRODUCTION**

1.     This affidavit is made in support of an application to search the residence described as:

3915 F Street, San Diego, California 92102 ("**Target Location**")

for evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b). The **Target Location** has been identified as the residence of Jaime Ivan Mendez-Maciel (hereinafter "MENDEZ"). As such, I believe that probable cause exists in that evidence, fruits, and instrumentalities of violations of federal criminal laws may be found at the **Target Location**.

### **Experience and Training**

2.     I am a Drug Enforcement Administration (DEA) Special Agent. I am currently assigned to the San Diego Field Division Enforcement Group 1. I have been employed by the DEA since March 2008. During my time with the DEA, I have investigated illicit controlled substance trafficking in San Diego and surrounding areas. I have had formal training and experience in controlled substance investigations and I am familiar with the manner in which controlled substances are packaged, marketed, and consumed.

3.     During my tenure, I have participated in investigations involving the use, possession, and distribution of controlled substances ranging from street level dealers up to sophisticated drug trafficking organizations. Pursuant to my participation in those investigations, I have performed various tasks which include, but are not limited to: assisting case agents, of specific investigations involving the use, possession and

trafficking of drugs; functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in drugs and those suspected of trafficking drugs; interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking and distribution of illegal drugs; participating in investigations involving the purchase of controlled substances, the execution of search warrants, surveillance in connection with narcotic investigations, and the interviews of confidential sources.

4.     Except as otherwise noted, the information set forth in this affidavit has been provided to me by federal, state and local narcotics task force officers or other law enforcement officers. Unless otherwise noted, whenever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Likewise, information resulting from surveillance, except, where otherwise indicated, does not necessarily set forth my own observations, but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

## BASES FOR CONCLUSIONS AND SOURCES OF INFORMATION

5.     As a result of my training and experience, and my conversations with other Special Agents of the DEA, HSI, and investigators from San Diego Police Department, from the basis of opinions and conclusions set forth below, which I drew from the facts set forth herein. All dates and times referenced in this affidavit are approximate.

6.     I make this affidavit, in part, based upon information from: (a) oral and written reports about this investigation which I have reviewed; (b) physical surveillance conducted by federal agents or local law enforcement

2

1   agents, which observations have been reported to me either directly or
2   indirectly;   and   (c)   summaries   of   conversations   and   electronic
3   communications   intercepted   pursuant   to   court-authorized   electronic
4   surveillance orders.

5          7.      Except as otherwise noted, information set forth in this affidavit
6   has either been observed or provided to me by other Agents from DEA or
7   other multi-agency federal, state, and local drug/gang task force officers
8   with whom I have spoken, whom were involved in this investigation, or
9   whose reports I have read and reviewed. Likewise, information resulting
10  from surveillance, except where otherwise indicated, does not necessarily
11  set forth my own observations but rather has been provided directly or
12  indirectly   by   other   law   enforcement   officers   who   conducted   such
13  surveillance.  In this affidavit, I have also included, where appropriate, my
14  interpretation of quoted and/or coded language in parenthesis and/or
15  brackets. Those interpretations are based upon my training and experience,
16  conversations I have had with other law enforcement officers familiar with
17  this investigation, as well as my personal participation in this investigation.

18         8.      Because this affidavit is being submitted for the limited purpose
19  of seeking search warrants specified below, I have not set forth each and
20  every fact learned during the course of this investigation. Rather, I have set
21  forth only the facts that I believe are necessary to establish the foundation
22  for an order authorizing the requested warrants.

23         9.      I respectfully submit that the facts contained in the numbered
24  paragraphs below demonstrate that there is probable cause to believe that
25  fruits, instrumentalities, and evidence of a violation of the following
26  enumerated offenses:  distribution of controlled substance, and conspiracy
27  to do the same (21 U.S.C. Sections 841(a)(1) and 846); and illegal use of a
28  communication facility (21 U.S.C. Section 843(b)) (hereinafter collectively

referred to as the "Target Offenses") will be found at the **Target Location**, which is fully described in Attachment A.

## PROBABLE CAUSE – INTRODUCTION AND BACKGROUND

10.   Starting in November 2016, Agents from DEA began investigating the illegal narcotics trafficking activities of MENDEZ and his associates operating in San Diego, California and the surrounding areas. Investigators identified MENDEZ, who resides at the **Target Location**, as a large-scale distributor of methamphetamine in the San Diego area. MENDEZ obtains the methamphetamine from a Tijuana based source-of-supply identified as Fernando Juarez-Aragon (hereinafter "JUAREZ").

11.   JUAREZ would send the narcotics to MENDEZ using a smuggler identified as Juan Garcia (hereinafter "GARCIA"). Routinely, GARCIA drove a white Lincoln sedan across the United States/Mexico border with multiple pounds of methamphetamine hidden in the front and rear bumpers of the vehicle. GARCIA would then park the vehicle at the 2405 Bluehaven Ct., San Diego. MENDEZ's nephew, identified as Jesse Cortes ("CORTES"), would pick up the vehicle and drive it to MENDEZ's narcotics "stash" house located at 4285 Logan Ave., San Diego. After the vehicle arrived at 4285 Logan Ave., San Diego, MENDEZ would supervise the unloading of the narcotics from the vehicle, and once unloaded, the narcotics were then distributed to various parts of the country, including Los Angeles, San Jose, and Denver.

12.   This investigation has included the use of Title III electronic and wire intercepts. On May 22 and June 29, 2017, the Honorable Michael M. Anello of the Southern District of California authorized multiple wiretaps on telephones used by various subjects, including phones used by MENDEZ. During the course of this investigation, MENDEZ was intercepted

4

coordinating the delivery of methamphetamine from JUAREZ, as well as coordinating the distribution to Los Angeles, California.

## PROBABLE CAUSE – TARGET LOCATION

### June 7, 2017

13.   At approximately 9:07 a.m., MENDEZ drove his white Chrysler minivan park near his residence at the **Target Location**. MENDEZ got out of the vehicle and walked into the residence.

14.   At approximately 9:24 a.m., CORTES and an unknown female walked out of 3915 F St., got into his Honda Civic, and drove away.

15.   At approximately 9:50 a.m., the Honda Civic arrived at 2405 Bluehaven Ct., San Diego and parked. Then it drove away.

16.   At approximately 10:35 a.m., the white Lincoln sedan was parked on Dairy Mart Rd., San Diego, unoccupied, approximately 50 yards south of Servando Ave. near 2405 Bluehaven Ct., San Diego.   Border crossing records show that GARCIA crossed the vehicle into the United States at the Otay Mesa Port of Entry that morning at 12:50 a.m.

17.   At approximately 10:53 a.m., JUAREZ called MENDEZ. MENDEZ said he was worried because the guy's phone is off and they went to look for him, but the car was not there. JUAREZ said he would give MENDEZ a number. MENDEZ told JUAREZ to send it.

18.   At approximately 11:08 a.m., JUAREZ called MENDEZ. JUAREZ told MENDEZ to go the guy's house, the guy will call MENDEZ because JUAREZ gave him MENDEZ's number. JUAREZ said to send the guy for the car. MENDEZ said he would.

19.   At approximately 11:19 a.m., JUAREZ called MENDEZ. JUAREZ said they were located in the back. JUAREZ said that almost all of them had "CH" on them; ten have a "P" on them; and seven have an "M";

and one of the different ones.  JUAREZ said the P and the 40 are for one side, and the other 10 of the CH go somewhere else.

20.   At approximately 11:21 a.m., MENDEZ called GARCIA. MENDEZ asked GARCIA to send him his direct one.  GARCIA said it was the same place as last time, but that he would send it again.  MENDEZ asked if it was the same place that his cousin went to, and GARCIA said that it was.

21.   At approximately 11:22 a.m., MENDEZ called CORTES, and told him to go over there since the guy was there already. MENDEZ asked CORTES to call back once he was outside so that the guy comes out.

22.   At approximately 11:42 a.m., a Hispanic male wearing a gray track suit with bright green stripes walked up to the Lincoln sedan, got into the driver's seat, and drove away.  A minute late, the Lincoln parked in a parking space in the cul-de-sac of 2405 Bluehaven Ct., San Diego.  GARCIA got out of the driver's seat wearing a grey track suit with bright green stripes and walked towards 2405 Bluehaven Ct., San Diego.

23.   At approximately 11:44 a.m., the Lincoln drove away from 2405 Bluehaven Ct., San Diego and merged onto Interstate-5.  A California Highway Patrol officer stopped the Lincoln.  The driver identified himself to CORTES.  CORTES consented to a search of the vehicle by a canine trained in the detection of narcotics.  After the canine alerted to the vehicle, the officer searched the vehicle.  He discovered 66 packages hidden in the front and rear bumpers of the Lincoln sedan.  Forty-nine packages had the letters "CH" written, nine packages had the letter "M" written on them, and seven packages had the letter "P" written on them. There was also a brick-shaped package with the letter "M" written on it.  Also found in the vehicle was a valid registration and insurance card for the Lincoln in GARCIA's name.  CORTES was transported to San Diego County Jail and booked.

1 Investigators submitted the packages to the DEA lab for analysis. The lab
2 report identified the substances contained in the 66 packages as 29.5
3 kilograms, or 64.5 pounds of methamphetamine (actual) with 99% purity
4 and 1 kilogram of cocaine.

5     24. From February to August 2017, agents have been receiving GPS
6 data of the cellular phone used by MENDEZ. Almost every night, the GPS
7 of his phone was centered on the **Target Location.** During the course of
8 this investigation, DEA agents have observed MENDEZ at the **Target**
9 **Location** on multiple occasions. A public records query of MENDEZ shows
10 that, as of September 2017, his listed home address is the **Target Location**.

11     **BASIS FOR EVIDENCE SOUGHT IN SEARCH WARRANT**

12     25. Based upon my training and experience, consultation with other
13 law enforcement officers experienced in drug investigations, and all the facts
14 and opinions set forth in this affidavit, I believe that probable cause exists that
15 the **Target Location** was being used by MENDEZ to store materials and
16 documents related to controlled substances.

17     26. In addition, I know that:

18     a. Individuals involved in narcotics trafficking often maintain
19 the following items in their residences and vehicles: controlled substances and
20 paraphernalia for packaging, weighing, cutting, testing, distributing and
21 manufacturing controlled substances. They will commonly have this
22 contraband on hand, secreted at their premises or on their person or in their
23 vehicle, in order to maintain the confidence of their customers as well as to
24 satisfy their own habits. The selling of such contraband is an ongoing type of
25 business, because it takes time to develop clientele, the nature of drug abuse
26 requires a steady supply, and the business tends to be too lucrative to abandon.
27 They also have "fruits" of their illegal sales on hand, including United States
28 currency and other valuables.

b. Individuals involved in narcotics trafficking often maintain records of their narcotics transactions and other records of evidentiary value for months or years at a time. It is common, for example, for narcotics traffickers to keep pay/owe sheets or other papers of narcotics sold and monies owed. Such pay/owe sheets or papers are used as a basis for accounting and for settling existing debts. Such records are often maintained for a substantial period of time even after the debts are collected. I have found in my training and experience that such records are invaluable to narcotics traffickers and that such records are rarely discarded. Finally, it has also been my experience that such records and pay/owe sheets also frequently include the names, identities and telephone numbers of suppliers, customers, and co-conspirators.

c. Individuals involved in narcotics trafficking must often rely on others to obtain their drugs and to help them market the narcotics. Frequently, traffickers maintain evidence of the identities of these co-conspirators at their residence and their vehicles.

d. Individuals involved in narcotics trafficking often utilize stash houses to store illegal narcotics; weigh, cut and package the illegal narcotics; store narcotics proceeds, and/or store information relating to their drug trafficking business.

e. Individuals involved in narcotics trafficking commonly earn income in the form of cash and try to legitimize these profits. In order to do this, traffickers frequently attempt to secrete, transfer and conceal the money by means, including, but not limited to: placing assets in names other than their own to avoid detection while maintaining control; laundering the money through what appears to be legitimate business or businesses; hiding money in their homes, safes and safety deposit boxes; or using the money to buy assets which are difficult to trace. Records of these and other types of transactions

are often found at the residences of individuals involved in narcotics and firearms trafficking.

f. Individuals involved in narcotics trafficking often keep and maintain large amounts of United States currency at their residences and in their vehicles. Such funds are often used for every-day expenditures and to maintain and finance their ongoing narcotics business.

g. Additionally, individuals involved in narcotics trafficking often amass and maintain assets at their residence which were generated by their trafficking activities, or purchased with the cash earned from such trafficking.

h. Individuals involved in narcotics trafficking often maintain weapons, firearms and ammunition on their person or in their residence and/or vehicles. Such weapons and firearms are used, and can be used, as an instrumentality of the crime of possession and distribution of drugs and firearms. Furthermore, I am aware of instances in which traffickers have maintained such items in their residences and vehicles in order to protect themselves and guard their drugs, firearms and profits, as well as for enforcement purposes during their narcotics and firearms dealings.

i. Residences and premises used by individuals involved in narcotics trafficking usually contain articles of personal property evidencing the identity of person(s) occupying, possessing, residing in, owning, frequenting or controlling the residence and premises.

j. Individuals involved in narcotics trafficking frequently communicate with co-conspirators by means of cellular telephones and electronic devices, such as computers, and usually maintain these items on their person and/or in their residences and vehicles.

27. It is also my opinion and belief that the above-described documents are currently possessed by narcotics dealers and manufacturers much the

1  same way a legitimate business will maintain records and tools of its trade
2  whether or not the business has a particular item in inventory on a given date.
3  These documents are kept by narcotics dealers whether or not the dealer is in
4  possession of any drugs or chemicals at any given moment.

5  ## REQUEST FOR SEALING

6  28.  This is an ongoing investigation of which the targets are unaware.
7  It is very likely, based upon the above, that evidence of the crimes under
8  investigation exists in the direct and indirect control of the targets. There is
9  reason to believe, based on the above, that premature disclosure of the
10  existence of the warrant will result in destruction or tampering with that
11  evidence and seriously jeopardize the success of the investigation. Accordingly,
12  it is requested that this warrant and its related materials be sealed until
13  further order of the Court.

14  ## CONCLUSIONS

15  29.  Based on all of the above, my experience and training, a review of
16  documents and other relevant information I believe to be reliable, and
17  discussions with other law enforcement officers, it is my opinion that the items
18  listed in Attachment B are fruits, instrumentalities or evidence of a violation
19  of the following enumerated offenses: distribution of controlled substance, and
20  conspiracy to do the same (21 U.S.C. Sections 841(a)(1) and 846); and illegal
21  use of a communication facility (21 U.S.C. Section 843(b)). It is also my opinion
22  that there is probable cause to believe that the items set forth in Attachment
23  B are present at the **Target Location** as described in Attachment A.
24  //
25  //
26  //
27  //
28  //

30.   With the above information, I formally request the issuance of a search warrant authorizing a search of the **Target Location**, and the seizure of items described with particularity in Attachment B to the Application and Affidavit for Search Warrant.

31.   I declare under penalty and perjury the foregoing is true and correct to the best of my knowledge and belief.

Grant Carter
DEA Special Agent

SUBSCRIBED and SWORN to before me this ___12___ day of September, 2017

The Honorable William V. Gallo
United States Magistrate Judge

## ATTACHMENT A
### 3915 F Street, San Diego, California 92102
### DESCRIPTION OF PROPERTY TO BE SEARCHED

The premises and all parts therein, including all rooms, safes, storage containers, surrounding grounds, trash areas, vehicles, sheds, garages assigned to or part of the residence located at 3915 F Street, San Diego, California. The residence is a single family home with beige stucco walls with white trim, a white fence, and an attached one car garage. The front door is with a black security door. The numbers "3915" are written on the garage door.



3915 F St

# ATTACHMENT B

## ITEMS TO BE SEIZED

There is probable cause that the following constitute evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) and that they will be found in the **Target Location**:

1.     Mixtures containing a detectable amount of a controlled substance, including but not limited to methamphetamine, cocaine, heroin, marijuana, hashish, opiates, derivatives of opiates, and other narcotics that are controlled substances.

2.     Paraphernalia for packaging, using, weighing, cutting, testing, distributing, and identifying controlled substance(s).

3.     Documents reflecting the possession or distribution of controlled substances, the acquisition of property obtained with proceeds from narcotics trafficking, and interstate and foreign travel in connection with narcotics trafficking.

4.     Money, assets, and evidence of assets derived from or used in the possession or distribution of controlled substances and records thereof; including banking and financial institution records.

5.     Items or personal property tending to show identity of persons in ownership, dominion and control of the **Target Location**.

6.     Photographs and video and audio recordings which document an association with other co-conspirators and/or which display narcotics, firearms, or money and proceeds from narcotics transactions.

7.     Cellular telephones or personal computing devices. With respect to any and all electronically stored data in cellular telephones or personal computing devices, agents may seize, access, record, and search any communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

a. tending to indicate efforts to import, store or distribute controlled substances;

b. tending to identify other facilities, storage devices, or services--such as email addresses, IP addresses, phone numbers--that may contain electronic evidence tending to indicate efforts to import, store, or distribute controlled substances;

c. tending to identify co-conspirators, criminal associates, or others involved in importing, storing, or distributing controlled substances;

d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject phone; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

8. All incoming telephone calls received at the residence during the execution of the search warrant and all calls received on cellular telephones found during the execution of the search warrant.

All of the above constituting: (1) evidence of a violation of distribution of controlled substance, and conspiracy to do the same (21 U.S.C. Sections 841(a)(1) and 846); and illegal use of a communication facility (21 U.S.C. Section 843(b)); (2) contraband, fruits of the same offense or other items illegally possessed; or (3) property designed for use, intended for use, or used in committing this offense.

14